IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF ARKANSAS

HOT SPRINGS DIVISION

TIMBER AUTOMATION, LLC                                                                      PLAINTIFF

v.                                              NO. 6:20-CV-06076

FIBERPRO, LLC; JOSHUSA KRAUSS
HENRY MEYERS; and JEREMY HUTSON                                                   DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

Currently before the Court are Separate Defendant Jeremy Hutson's 12(b)(6) motion to dismiss (ECF No. 18) and Plaintiff Timber Automation, LLC's motion for a temporary restraining order and/or preliminary injunction (ECF No. 20). The Court finds that these matters are ripe for its consideration. For the reasons detailed herein, both motions will be GRANTED IN PART and DENIED IN PART.

## I.   BACKGROUND

This case arises from the alleged wrongful acquisition and use of confidential and proprietary information. The Court has original jurisdiction under the Defend Trade Secrets Act, 18 U.S.C. § 1836(c). 28 U.S.C. § 1331. Supplemental jurisdiction is exercised pursuant to 28 U.S.C. § 1367. In its complaint, Plaintiff Timber Automation, LLC, (Timber) alleges that, shortly after resigning his employment as an engineer with Timber in May 2020, Defendant Meyers covertly downloaded more than 11,000 files from his former employer's internal servers

1

and network systems and went to work for Timber's competitor, Defendant FiberPro, LLC (FiberPro).[1] Both Timber and FiberPro provide services in the forest products industry, and both companies manufacture woodyard and sawmill equipment, control systems, and optimization systems. Timber asserts the downloaded files have significant economic value and that the disclosure of the information poses an unfair threat to Timber's business and commercial operations. Timber alleges numerous causes of action against each of the Defendants, including conversion, tortious interference with a contractual relationship or business expectancy, theft of trade secrets under both federal and state law, breach of fiduciary duty and duty of loyalty, unauthorized computer program access and theft under Ark. Code Ann. §§ 5-41-202-203, unauthorized access to property under Ark. Code Ann. § 16-118-113, and unjust enrichment. Timber also requests an award of punitive damages.

## II.   MOTION TO DISMISS

Defendant Jeremy Hutson (Hutson) has filed a motion (ECF No. 18) for dismissal under Federal Rule of Civil Procedure 12(b)(6) arguing that Plaintiff has failed to allege sufficient facts to support the essential elements for any of its claims against him. Rule 8 of the Federal Rules of Civil Procedure requires a complaint to make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard is satisfied if the complaint alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

---

[1] Any facts recited herein are taken from the Complaint and construed in a light most favorable to Timber. The Court makes no final determinations of disputed matters binding in later stages of litigation. It is a "general rule that 'the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits.'" *Henderson v. Bodine Aluminum, Inc.*, 70 F.3d 958, 962 (8th Cir. 1995) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981) ).

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  When deciding the merits of a Rule 12(b)(6) motion to dismiss, the Court must accept as true all factual allegations and draw all reasonable inferences in the non-movant's favor. *See Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008); *Maki v. Allete, Inc.*, 383 F.3d 740, 742 (8th Cir. 2004).  Factual allegations need not be pleaded in great detail, but they must be sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Hutson argues the claims against him should be dismissed pursuant to Rule 12(b)(6), contending that the complaint fails plead facts alleging that he took part in the scheme to acquire and use Timber's electronic data.  For its part, Timber argues that Hutson's personal involvement is adequately pleaded by asserting allegations against "the Defendants."  The Court addresses each of the claims asserts against Hutson seriatim.

### A. Conversion

Under Arkansas law, electronically stored data can be converted when "standing alone and not deemed a trade secret" so long as "the actions of the defendant are in denial of or inconsistent with the rights of the owner or person entitled to possession." *Integrated Direct Marketing, LLC v. May*, 2016 Ark. 281, at 6, 495 S.W.3d 73, 76 (2016).  A complaint alleging conversion must plead facts sufficient to demonstrate that: (1) the plaintiff owned or was entitled to possess the personal property, and (2) the defendant intentionally took or exercised dominion or control over the personal property in violation of the plaintiff's rights.  *See* Ark. Model Jury Instructions – Civil, AMI 425 (2014 ed.); *Big A Warehouse Distributors, Inc. v. Rye Auto Supply, Inc.*, 19 Ark. App. 286, 719 S.W.2d 716 (1986) (allegation of an ownership interest or right to possession is necessary to maintain a conversion action).  It is not required for an owner

or person entitled to possession to be completely deprived of their property. *Integrated Direct Marketing*, 2016 Ark. at 4, 495 S.W.3d at 75. Additionally, a defendant can be liable when he directs an agent to exercise dominion or control over the property in a manner that is inconsistent with the plaintiff's interests. *See DWB, LLC v. D&T Pure Trust*, 2018 Ark. App. 283, 550 S.W.3d 420.

When viewing the allegations in a light most favorable to Timber, the complaint alleges that Hutson and Krauss knowingly assisted and facilitated Meyers' plan to leave Timber and download the electronic data so that FiberPro could directly compete with Timber. The complaint sufficiently alleges that Timber's competitors had no right to possess the electronic data. Timber has pled facts supporting a reasonable inference that Hutson and Kraus directed Meyers to utilize this data for FiberPro's economic use. The general notice required by Rule 8, *Twombly*, and *Iqbal*, has been satisfied. Accordingly, Timber's complaint sufficiently states a claim for conversion against Hutson.

### B. Tortious interference with a contractual relationship or business expectancy

Tortious interference with a contract or business expectancy has four elements: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party; (3) intentional interference inducing or causing a breach of termination of the relationship of expectancy; and (4) damages resulting from the party whose relationship or expectancy has been disrupted. *Overturff v. Read*, 2014 Ark. App. 473, at 8, 442 S.W.3d 862, 867. In addition, Arkansas law requires that the defendant's conduct be at least improper. *Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 444, 47 S.W.3d 866, 875 (2001). This tort is based upon the defendant's wrongful interference with the

plaintiff's contractual or business expectancies with a third party. *Navorro-Monzo v. Hughes*, 297 Ark. 444, 447, 763 S.W.2d 635, 636 (1989). There must be proof that a third party either failed to continue or refused to enter a contractual relationship with the claiming party as a result of the defendant's improper conduct. *Id*. at 447, 763 S.W.2d at 636.

Timber's complaint sets out how Defendants collectively hindered Timber's business relationship with Dempsey Wood Products. According to Timber, Dempsey backed out of a project agreement after FiberPro obtained Timber's electronic data. Timber pleads that Defendants engaged in a plan to improperly take the data. Timber also alleges that FiberPro used Timber's designs and confidential information to secure the Dempsey project. As stated previously, Timber's complaint alleges that the individual defendants cooperated amongst themselves to unlawfully take and use Timber's electronic data. The fact that Timber's allegations rest on information and belief is not a reason for dismissal at this stage in the proceedings. *See Brown v. Budz,* 398 F.3d 904, 914 (7th Cir.2005) ("Where pleadings concern matters peculiarly within the knowledge of the defendants, conclusory pleading on 'information and belief' should be liberally viewed.") (internal quotation omitted). Accordingly, Hutson's motion on this claim for relief will be denied.

### C. Theft of trade secrets

Timber also alleges that Hutson misappropriated a variety of Timber's trade secrets, including design and assembly parts from Timber's databases, vendor catalogues, customer project folders, and equipment and system designs. Hutson argues that Timber has not alleged facts to plead a claim under the Arkansas Theft of Trade Secrets Act. Under the Act, a "trade secret" is any

information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(A) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ark. Code Ann. § 4-75-601(4).  Whether certain information constitutes a "trade secret" is ordinarily a question of fact and should not be decided on a motion to dismiss.  *In re Iowa Freedom of Info. Council,* 724 F.2d 658, 663 (8th Cir. 1983); *McGlothlin v. Drake*, 2012 WL 1768098, at *5 (E.D. Ark. May 16, 2012).  However, the main thrust of Hutson's position is that Timber failed to provide facts suggesting that Hutson misappropriated the alleged trade secrets.  In Arkansas, "misappropriation" means:

(A) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(B) Disclosure or use of a trade secret of another without express or implied consent by a person who:

    (i)    Used improper means to acquire knowledge of the trade secret; or

    (ii)    At the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:

        (a) Derived from or through a person who had utilized improper means to acquire it:

        (b) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

        (c) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(C) Before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake;

Ark. Code Ann. § 4–75–601(2).

In our case, the complaint establishes that Timber took several measures to protect the information downloaded by Defendant Meyers.  Among these measures were storing the data on password-protected servers, limiting access to certain employees, and using a firewall to protect its internal servers and network systems.  Furthermore, the complaint alleges that Hutson and Krauss collectively directed Meyers to obtain the data for FiberPro's economic benefit.  These allegations create a reasonable inference that Hutson knew that the data should have been kept secret and limited in its use.  Thus, Timber can sustain a claim against Hutson for misappropriation of trade secrets.[2]

### D. Breach of fiduciary duty and duty of loyalty

In Arkansas, the elements of a fiduciary relationship are three-fold: "(1) the first party, that is, the beneficiary or the principal, must place trust and confidence in the second party, the fiduciary; (2) the fiduciary actually accepts that trust and confidence; and (3) as a result of the placement of that trust, the fiduciary acquires influence and superiority over the principal." *Vellios v. Farmers & Merchants Bank*, No. 3:19-CV-03071, 2020 WL 428142, at *3 (W.D. Ark. Jan. 27, 2020).  "A fiduciary relationship exists between two persons, one of whom has a duty to act for the benefit of another and owes the other duties of good faith, trust, confidence, and candor." 1 Howard W. Brill & Christian H. Brill, *Ark. Law of Damages* § 15:3 (6th ed. 2015).  The determination of a fiduciary relationship is a matter of law.  *Long v.*

---

[2] The Trade Secrets Act is the exclusive remedy for the alleged misappropriation of trade secrets and may preempt recovery based on other forms of relief.  *See R.K. Enter., LLC v. Pro-Comp Mgmt., Inc.*, 356 Ark. 565, 574, 158 S.W.3d 685, 690 (2004) (holding that the Trade Secrets Act preempts tort claims for conversion of trade secrets and conspiracy).  At this stage in the proceedings, Timber can plead multiple claims for relief, and it can decide later which claims to pursue down the road.

*Lampton*, 324 Ark. 511, 520, 922 S.W.2d 692, 698 (1996). "The party claiming the existence of a fiduciary or confidential relationship has the burden of establishing the facts supporting such a relationship." Brill & Brill, *supra*, § 15:3.

Because Timber is a limited liability company, the Court must look to the Small Business Entity Pass Through Act (the "LLC Act") to determine whether Hutson plausibly owed a fiduciary duty to Timber. *See* Ark. Code Ann. § 4-32-101 *et seq*. It is well-established that the rights, duties, and obligations of members and managers of an LLC spring from the LLC Act and the LLC's operating agreement. The duty of loyalty is addressed by subsection (2) of Arkansas Code Annotated § 4-32-402. *See* Frances S. Fendler, *Losing Faith: Limited Liability Companies in Arkansas and the Fiduciary Duties of Loyalty and Good Faith*, 31 U. ARK. LITTLE ROCK L. REV. 245, 252 (2009). Under this subsection, members or managers are liable to the LLC for uses of property, including confidential and proprietary information, not authorized by more than one-half of those participating in the management or business affairs of the LLC. *See* Ark. Code Ann. § 4-32-402(2); *see also* John M. Cunningham & Frances S. Fendler, *Revising Arkansas LLC Fiduciary Law to Protect the Unrepresented*, Ark. Law., Spring 2011, at 14, 15 (suggesting the duty of loyalty extends to several subsidiary duties, including the duty not to compete against the LLC and the duty not to usurp LLC business opportunities).

Here, Timber fails to plead facts indicating that Hutson was either a manager or member of Timber, and thus, there is no basis to suggest that Hutson owed any type of a fiduciary duty. Those individuals who hold an ownership interest in the LLC are designated as "members," and "managers" are those individuals who may or may not be members of the LLC but manage the LLC's operations. *See* Ark. Code Ann. §§ 4-32-102(9)-(10), 4-32-401, and 4-32-801. Because a fiduciary duty is not sufficiently alleged, Timber cannot assert its breach of loyalty claim against

Hutson. *Infinity Headwear & Apparel, LLC v. Coughlin*, 2014 Ark. App. 609, 4, 447 S.W.3d 138, 141 (2014) (stating Arkansas does not recognize an independent breach of loyalty claim when no fiduciary relationship between an employer and employee is alleged). Accordingly, the Court will dismiss Timber's breach of fiduciary duty and breach of loyalty claims against Hutson.

### E. Unauthorized computer program access and theft

Timber asserts a claim for unauthorized computer program access and theft under Ark. Code Ann. §§ 5-41-202, 203. This Court has previously found that a violation of these statutes does not give rise to civil liability. *Miller v. Meyers*, 766 F. Supp. 2d 919, 924–25 (W.D. Ark. 2011) (holding that the statutes only address criminal sanctions). Because there is no indication that civil remedies are available under these statutes, the Court will dismiss this claim against Hutson.

### F. Unauthorized access to property

Timber also asserts a claim for unauthorized access to property under Ark. Code Ann. § 16-118-113. The statute states that a civil cause of action is available against persons who directly access commercial property in nonpublic areas, and against those who knowingly direct or assist another person to take the property:

> (b) A person who knowingly gains access to a nonpublic area of a commercial property and engages in an act that exceeds the person's authority to enter the nonpublic area is liable to the owner or operator of the commercial property for any damages sustained by the owner or operator.
>
> …
>
> (d) A person who knowingly directs or assists another person to violate this section is jointly liable.

Ark. Code Ann. § 16-118-113(b), (d).  Furthermore, the statute sets out a list of ways that a person can be found liable.  Liability is imposed when a person "knowingly enters a nonpublic area of commercial property for a reason other than a bona fide intent … and without authorization subsequently"

> (1) Captures or removes the employer's data, paper, records, or any other documents and uses the information contained on or in the employer's data, paper, records, or any other documents in a manner that damages the employer;
> 
> …
> 
> (4) Conspires in an organized theft of items belonging to the employer; or
> 
> (5) Commits an act that substantially interferes with the ownership or possession of the commercial property.

Ark. Code Ann. § 16-118-113(c).

As discussed above, the complaint asserts that each of the individual defendants intentionally took part in a plan to take Timber's electronic data so that FiberPro could compete with Timber.  The complaint sufficiently establishes that the information downloaded by Meyers constitutes "commercial property," because it alleges that Timber used the data for business purposes.  Ark. Code Ann. § 16-118-113(a)(1)(C) (defining commercial property as "business property").  Timber also alleges facts suggesting the data was taken from a "nonpublic area."  Timber pleads that the data was password- protected, restricted to certain employees, and secured by a firewall.  Ark. Code Ann. § 16-118-113(a)(2) (defining nonpublic area as "an area not accessible to or not intended to be accessed by the general public."). These allegations fit within the interests that the statute seeks to protect.  Accordingly, the complaint sufficiently states a claim for unauthorized access to property.

## G. Unjust Enrichment

"[A]n action based on unjust enrichment is maintainable where a person has received money or its equivalent under such circumstances that, in equity and good conscience, he or she ought not to retain." *El Paso Production Co. v. Blanchard,* 371 Ark. 634, 646, 269 S.W.3d 362, 372 (2007). Here, Timber alleges that Hutson and the other individual defendants benefitted from the acquisition and use of Timber's electronic data. Timber primarily alleges that the defendants used the data to shortcut the amount of time spent on certain projects to gain a competitive advantage. This allegation is sufficient to state a claim for unjust enrichment. The finer details of whether Hutson benefitted from the alleged misappropriation can be determined in discovery.[3]

## H. Punitive Damages

Under Arkansas law, punitive damages are not an independent cause of action. Rather, punitive damages are a form of relief available for an underlying cause of action. *Simpson v. Wright Med. Grp., Inc.*, No. 5:17-cv-0062-KGB, 2018 WL 1570795, at *10 (E.D. Ark. Mar. 30, 2018); *Bell v. McManus*, 294 Ark. 275, 277, 742 S.W.2d 559, 560 (1988). Because the Court denies Hutson's motion on several counts, it declines to address the issue of punitive damages at this time.

---

[3] Timber can simultaneously pursue claims for theft of trade secrets and unjust enrichment. *See* Ark. Code Ann. § 4-75-606(b) (providing that one "may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss."); *see also Saforo & Associates, Inc. v. Porocel Corp.*, 337 Ark. 553, 991 S.W.2d 117 (1999) (interpreting Ark. Code § 4-75-606(b) to mean either the plaintiff's lost profits or the defendant's gain, "whichever affords the greater recovery.").

### III. MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

On August 18, 2020, Timber filed a motion for a temporary restraining order and/or preliminary injunction (ECF No. 20). Timber seeks injunctive relief as follows: (1) a requirement that Defendants return Timber's business information; (2) that the Court enjoin the defendants from further use of the information; (3) that the Court enjoin the defendants from contacting or soliciting Timber's clients, customers, and vendors, (4) that the Court enjoin the defendants from competing with Timber, and specifically, prohibit the defendants from performing any work for Dempsey Woods Products, Inc., and (5) that the Court enjoin the defendants from destroying any correspondence, documents, or other information that relates to the matters referenced in Timber's complaint. Timber also requests an award of costs and attorneys' fees. The defendants received notice of Timber's motion and filed responses in opposition. Federal Rule of Civil Procedure 65(a) and (b) provides that a temporary restraining order can be granted without written or oral notice to the adverse party, while a preliminary injunction may be granted only if the adverse party has received notice. Thus, Timber's motion is more properly characterized as a motion for a preliminary injunction.

The decision to grant or deny a preliminary injunction lies within the sound discretion of the district court. Rule 65 does not always require a hearing. When material facts are not in dispute, district courts generally need not hold an evidentiary hearing. *Transcon. Gas Pipe Line Co., LLC v. 6.04 Acres, More or Less, Over Parcel(s) of Land of Approximately 1.21 Acres, More or Less, Situated in Land Lot 1049*, 910 F.3d 1130, 1169 (11th Cir. 2018); *Maryland Casualty Co. v. Realty Advisory Board on Labor Relations,* 107 F.3d 979, 984 (2d Cir.1997). In the present case, none of the parties have requested a hearing, and the Court finds it unnecessary to hold one, because there does not appear to be much dispute around this issue.

The principal purpose of preliminary injunctive relief is to preserve the Court's power to render a meaningful decision after conducting a trial on the merits. *See* C. Wright & A. Miller, 11 Federal Practice and Procedure, § 2947 (1973). Preliminary injunctions "must be narrowly tailored to remedy only the specific harms shown by the plaintiffs, rather than to enjoin all possible breaches of the law." *St. Louis Effort for AIDS v. Huff*, 782 F.3d 1016, 1022–23 (8th Cir. 2015) (quoting *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004) (per curiam)). When entering a preliminary injunction, the district court has the flexibility to "mold each decree to the necessities of the particular case" and "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). Rule 65 establishes the procedure that must follow to grant a preliminary injunction. An order granting a preliminary injunction "must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). A district court cannot issue a preliminary injunction unless "the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." FED. R. CIV. P. 65(c).

It is well-settled that applications for preliminary injunctions within the Eighth Circuit require the Court's consideration of the following factors: (1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between the harm suffered by the movant and the harm that other interested parties will incur if an injunction is granted; and (4) whether the issuance of an injunction is in the public interest. *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). The Court will consider each of these factors in turn.

## A. Substantial likelihood of success

The first factor that must be considered is the likelihood or probability of success on the merits. *Dataphase,* 640 F.2d at 114. The movant need not establish absolute certainty of success, but only that they are likely to succeed on the merits. *Knutson v. AG Processing, Inc.*, 302 F. Supp. 2d 1023, 1035 (N.D. Iowa 2004). As explained below, and only for the purpose of issuing a preliminary injunction, the Court concludes that Timber has shown a likelihood of success on the conversion claim alleged against Henry Meyers. Accordingly, the Court will not discuss Timber's likelihood of success on the remaining claims. *Richland/Wilkin Joint Powers Authority v. United States Army Corps of Engineers*, 826 F.3d 1030, 1040 (8th Cir. 2016) (stating the movant must meet the likelihood of success factor as to only one claim).

In the present case, FiberPro and Krauss acknowledge that Meyers downloaded Timber's information on one of FiberPro's computers. After reviewing Timber's complaint, FiberPro hired Pivot Legal Services, Inc., to secure and restrict access to this information. Pivot has submitted an affidavit stating that the information will be held on collection disks for preservation purposes. (ECF No. 35-3, Declaration of Matt Hollister, ¶¶ 4-7). Also, Meyers has indicated that he no longer has access to the information, and that he has transferred his files to an expert computer forensic examiner. (ECF No. 33, ¶ 6). Defendants' voluntary protective measures reflect the likelihood that the information was obtained through improper means and in violation of Timber's rights. *See* Ark. Model Jury Instructions – Civil, AMI 425 (2014 ed.) (listing elements of conversion as (1) plaintiff's ownership of personal property and (2) the defendant's intentional taking or exercise of dominion or control in violation of the plaintiff's rights). Accordingly, Timber has a substantial likelihood of succeeding on its conversion claim.

### B. Threat of irreparable harm

Timber offers two primary arguments to suggest it has been irreparably harmed. First, Timber contends that FiberPro has already used the misappropriated information to compete for Timber's customers. Second, Timber argues that there is a continuous threat of future irreparable harm because the defendants will continue to use the information in the absence of an injunction. Courts generally refuse to find irreparable harm when the moving party may be compensated by an award of money damages at judgment. *Sampson v. Muray,* 415 U.S. 61, 90 (1974). However, the loss of intangible assets, such as the loss of control of confidential and proprietary information or the loss of reputation and goodwill, can constitute irreparable injury. *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 741 (8th Cir. 2002); *see also Laidlaw, Inc. v. Student Transp. of America, Inc.,* 20 F.Supp.2d 727, 766 (D.N.J.1998) ("Generally, the loss of good will, the disclosure of confidential and proprietary information, and the interference with customer relationships may be the basis for a finding of irreparable harm.").

Despite conflicting assertions on whether FiberPro used the information downloaded by Meyers, it is undisputed that Timber's information was on FiberPro's computer network. The fact that the folder was entitled "Henry Meyers" suggests the strong possibility that Meyers used this information while working for FiberPro. Indeed, FiberPro indicates that the Henry Meyers folder contained seven subfolders entitled "Catalogues, Dempsey, Dwgs, Parts, Spreadsheets, Test Library, and WF." (ECF No. 35-3, ¶ 7). The use or continued use of this information could put Timber at a competitive disadvantage that a legal remedy could not redress. Faced with evidence of Meyers' conduct during the final hours of his employment, as well as evidence that

Timber has lost a client to FiberPro,[4] a limited remedy is needed to ensure that Timber's information remains protected.

### C. Balance of equities

The third factor requires the Court to weigh the potential for harm to the moving party against any potential harm to the nonmoving party if an injunction is issued. *Dataphase*, 640 F.2d at 114. The Court agrees that absent an injunction, there is a risk that Timber's information could be used for competitive purposes, and it finds that the balance of equities tilts in Timber's favor. By restricting their own access to the information, FiberPro and Meyers have shown that they are not substantially burdened by restraining the information's use. Timber certainly has an interest in preventing the future use or retention of this information. The injunction to follow will be narrowly tailored because it will not prevent the defendants from conducting business with any of Timber's current or former clients. Rather, it will enjoin the defendants from using or retaining the information downloaded by Meyers.

### D. Public interest

The final *Dataphase* factor requires Timber to show that preliminary injunctive relief is in the public interest. *Dataphase*, 640 F.2d at 114. The public interest does not weigh heavily in this case because the interests at stake are mainly private. However, the public has an interest in the preservation of fair competition and in the protection of confidential and proprietary information. Accordingly, the Court finds that Timber has met its burden to show that a limited and narrowly tailored remedy is in the public interest.

---

[4] The Court treats Timber's verified complaint as an affidavit, and thus considers the complaint as evidence to support an injunction. *See Myers v. Thompson*, 192 F. Supp. 3d 1129, 1138 (D. Mont. 2016).

### E. Security Bond

A court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." FED. R. CIV. P. 65(c). In the circumstances of this case, the Court does not foresee that the defendants will suffer any loss of income should a limited preliminary injunction be issued. For this reason, a nominal bond in the amount of $1,000 of bond is appropriate.

### IV. ORDER

IT IS HEREBY ORDERED that Separate Defendant Jeremy Hutson's motion to dismiss (ECF No. 18) is GRANTED IN PART and DENIED IN PART. Plaintiff's claims against Hutson for breach of fiduciary duty and duty of loyalty are DISMISSED WITHOUT PREJUDICE. Plaintiff's claim for unauthorized computer program access and theft under Ark. Code Ann. § 5-41-202-203 are DISMISSED WITH PREJUDICE. Hutson's motion is DENIED as to the remaining claims.

IT IS FURTHERED ORDERED that Plaintiff's motion for a preliminary injunction (ECF No. 20) is GRANTED IN PART and DENIED IN PART. The Court hereby ISSUES the following limited Preliminary Injunction Order:

IT IS HEREBY ORDERED that Defendants shall maintain and hold all records, documents, or other forms of information (collectively, the "Information"), including those stored in electronic format in any place which they may store such information which relate to the allegations in the Complaint, to ensure the fair conduct of this litigation;

ORDERED that this injunction does not prohibit Defendants from conducting business with Dempsey Woods Products, Inc., or any other current or former client of the Plaintiff;

ORDERED that the defendants are enjoined from accessing, using, or disclosing the Information for the purpose of engaging in or attempting to engage in any business similar to that carried on by Plaintiff or any of its related parent or subsidiary entities;

ORDERED that the Plaintiff shall post bond in the amount of $1,000 no later than 5:00 P.M. on Tuesday, October 6, 2020.  To the extent any party believes an additional bond is necessary, they should advise the Court within fourteen days of this filing date of this Order; and

ORDERED that any relief not specifically granted by the foregoing terms should be and hereby is DENIED.

**IT IS SO OREDERED this 2nd day of October 2020.**

/s/ *Robert T. Dawson*
**ROBERT T. DAWSON**
**SENIOR U.S. DISTRICT JUDGE**